USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

RUBEN LUCIANO-JIMENEZ,

Petitioner,

-v-

LAWRENCE CATLETTI, et al.,

Respondents.

---------------------------------------------------------------------X

26-cv-3546 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Petitioner Ruben Luciano-Jimenez ("Petitioner") moves, pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, for an order altering this Court's July 22, 2026 decision denying him release. Dkt. No. 49. For the following reasons, the motion is denied.

**BACKGROUND**

Familiarity with the prior proceedings in this matter is presumed.

Petitioner is a 42-year-old citizen of the Dominican Republic who, after having entered without documentation, has resided in this country since 2010. Dkt. No. 1 ¶¶ 3, 13, 26. He was granted withholding of removal in 2014. *Id.* ¶ 28. However, in February 2018, he was convicted in this Court on charges of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C), based on conduct that occurred in 2016. *Id.* ¶¶ 6, 29; Dkt. No. 1-2. Petitioner was released from prison on October 5, 2018. Dkt. No. 1 ¶¶ 6, 31. He was immediately placed in immigration custody but ordered released by the United States District Court for the Middle District of Pennsylvania on July 6, 2021. *Id.* ¶¶ 6, 44. Petitioner was re-detained by Immigration and Customs Enforcement ("ICE") officers on June 19, 2025, and has been subject to immigration detention since then. *Id.* ¶¶ 8, 47. On January 12, 2026, an

immigration judge ("IJ") denied Petitioner's application for deferral of removal under the United Nations Convention Against Torture and ordered him removed to the Dominican Republic. *Id.* ¶ 4. His appeal to the Bureau of Immigration Appeals remains pending. *Id.*

On April 29, 2026, Petitioner filed a petition for the writ of *habeas corpus* in this Court pursuant to 28 U.S.C. § 2241 complaining of his prolonged detention in immigration custody. Dkt. No. 1. On June 25, 2026, the Court issued an Opinion and Order granting Petitioner a hearing at which the Government would be required to establish by clear and convincing evidence that he was either a danger to the community or presented a risk of flight. Dkt. No. 34. The Court conducted that hearing on July 10, 2026. *See* July 10, 2026 Minute Entry; Dkt. No. 51.

At the hearing, the Government presented evidence that Petitioner had been arrested eight times from the date of his release in July 2021 until his re-detention in June 2025. Dkt. No. 54-4 at 1–2. The Government also presented evidence that Petitioner had been arrested once since his re-detention—in June 2026, on charges of assault at the Orange County Correctional Facility where he was then being detained. *Id.* at 2. Petitioner testified that he recalled the arrests that occurred prior to his detention. Dkt. No. 51 at 19–21, 26. He also recalled that he had an altercation with another detainee at the Orange County facility in June 2026, although he denied that he hit the other detainee or that the altercation became physical. *See id.* at 17 (Petitioner's testimony that he "made the gesture, but I did not hit him").

Additionally, Petitioner testified that, prior to his detention, he was living with a girlfriend, that the mother of his daughter was living elsewhere, and that he lived in four places since his 2021 release. *Id.* at 23–24; Dkt. No. 54-6. Petitioner's mother is deceased and his father lives in the Dominican Republic. Dkt. No. 51 at 24–25. His daughter is living with her

mother, one of his two sons lives in the Bronx, and the other lives in the Dominican Republic. *Id.* at 25. Petitioner's sister lives in Yonkers. *Id.* at 27. He does not have a valid work permit to work in the United States. *Id.* at 25–26. He has never failed to attend an immigration or criminal hearing. *Id.* at 27.

The Court announced its decision from the bench on July 22, 2026. Dkt. Nos. 46, 47. The Court concluded that the Government had established by clear and convincing evidence that Petitioner was both a danger to the community and a risk of flight and that there were no suitable alternatives to detention. Dkt. No. 47 at 4–8. The Court reasoned as follows:

> The Court concludes that the government has justified the need for continued detention of petitioner by clear and convincing evidence. Petitioner was convicted in February 2018 in this court by guilty plea on charges of conspiracy to possess heroin with intent to distribute it based on [conduct] that occurred in 2016. He was sentenced to 24 months of imprisonment. He was released from imprisonment on the criminal charges in October 2018 but then was released from immigration detention in July 2021.
>
> Petitioner was then the subject of a large number of arrests. He was arrested in September 2022 on charges of robbery and theft armed with a deadly weapon, in February 2021 with possession of a forged instrument, in March 2023 with robbery and forcible threat with a deadly weapon, also in March 2023 with receiving stolen property, in June 2023 with possession of a forged instrument and criminal possession of stolen property, in May 2024 with grand larceny, criminal possession of stolen property, and unauthorized use of a vehicle, and in May 2025 with menacing and criminal possession of a weapon.
>
> Most problematically, in June 2026, while he was detained in Goshen, petitioner was involved in an assault where it was found that he assaulted another inmate with a stick. I recognize that petitioner says that the incident was preceded by one where he was assaulted but still this incident, by his own account, was not immediately preceded by an attack on him. It was because he said he felt intimidated.
>
> I also recognize that the disposition of most of those cases is unknown and that petitioner's only conviction was to have pled guilty to a noise violation in March 2023. My conclusion might have been different if there was one arrest, but the string of arrests by different arresting officers over a long period of time, when combined with the incident at the detention center, demonstrates to my belief that petitioner has trouble conforming his conduct to that required by the law. That goes to the risk of flight and to danger to the community.

*Id.* at 4–6.

The Court added:

> With respect to risk of flight, while petitioner may have made his appearances in the past, the calculus for him now is different. He is at the point of exhausting his appeals, and the fact that he showed up in the past does not indicate that he will show up in the future when the future might well be his removal from this country. From the record, petitioner has strong reason to resist return to the Dominican Republic, and from his criminal record, there's no reason to believe that he will follow the requirements of the law and show up voluntarily for his removal if that is the ultimate disposition.

*Id.* at 6. The Court based its conclusion regarding risk of flight also on the fact that Petitioner did not live with the mother of his child, that he has had multiple addresses, that he did not have work authorization, and that his ties to the community were not strong. *Id.* at 6–7.

**DISCUSSION**

Under Rule 59(e), Petitioner must identify an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *See Salamone v. Douglas Marine Corp.*, 111 F.4th 221, 232 (2d Cir. 2024); *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020). "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Rather, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion to reconsider [pursuant to Rule 59] is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion."

*NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 396 (S.D.N.Y. 2016) (quoting *Muyet v. United States*, 2009 WL 2568430, at *3 (S.D.N.Y. Aug. 19, 2009)).

Petitioner does not argue that there has been an intervening change of controlling law. He argues that the Court should alter its judgment and order his release because the Court overlooked material factual matters concerning the reliability of the Government's arrest evidence, Dkt. No. 49 ¶¶ 4–25, and to prevent manifest injustice, *id.* ¶¶ 26–30. Petitioner argues that only four of the eight arrests are listed on ICE's I-213 record for Petitioner and that four of the arrests (those on September 9, 2022, February 21, 2023, March 7, 2023, and June 8, 2023) are not listed on Petitioner's I-213. *Id.* ¶¶ 8, 12–14; *see also* Dkt. No. 49-1. Petitioner also attempts to poke holes in the reliability of the I-213 records. He argues that the Criminal Repository for the September 9, 2022 arrest lists September 9, 2022 as Petitioner's probation discharge date and does not list any arrest on that date. Dkt. No. 49 ¶ 13.

None of what Petitioner identifies qualifies as newly discovered evidence. Petitioner's counsel had the arrest records at the hearing. They were attached to the Government's May 11, 2026 response to Petitioner. Dkt. No. 25-18; *see also* Dkt. No. 25-4. Counsel also had access to Petitioner himself. Petitioner's counsel could have inquired into the arrest records either on direct examination or on redirect examination. Counsel apparently chose not to do so.[1] Despite

[1] Petitioner's counsel did make some, albeit limited, reference at the July 10, 2026 hearing to the reliability of the ICE records. *See* Dkt. No. 51 at 3 ("I don't plan to object to the admission of any of these documents. I do have some argument about their reliability."), 36 ("[T]he record that has been submitted is internally inconsistent."). Counsel made a more forceful argument with respect to purported inconsistencies in the documentation surrounding Petitioner's March 2023 arrest. *See id.* at 36. The Court considered these arguments in reaching its decision to deny release, acknowledging with respect to the string of arrests that "the disposition of most of those cases is unknown and that petitioner's only conviction was to have pled guilty to a noise violation in March 2023" but "find[ing] it hard to believe, with the long string of arrests, that each arrest was mistaken." Dkt. No. 47 at 5, 7.

complaining of the lack of supporting documentation for certain arrests, Petitioner notably has not submitted a declaration affirming that he was *not* arrested on any of the dates in question.

In any event, Petitioner's motion is based on a faulty predicate. All eight arrests are listed on the I-213 or in the ENFORCE Alien Removal Module ("EARM") records attached thereto. Dkt. No. 54-5 at 4, 21–34.[2,3] With respect to the February 21, 2023 arrest, the "I-213 Narrative" in the EARM data reflects that Petitioner was arrested on that date for possession of a forged instrument and criminal possession of stolen property, *id.* at 23, and Petitioner admitted to the arrest at the hearing, Dkt. No. 51 at 19. Petitioner asserts that no supporting documentation of the June 8, 2023 arrest was provided, Dkt. No. 49 ¶ 10, but the Government has now submitted a sworn arrest warrant charging Petitioner with being in possession of a vehicle with a forged license plate and a stolen license plate on June 8, 2023, Dkt. No. 54-3, and having pled to a motor vehicle license violation on June 28, 2023, *id.* As to the September 9, 2022 arrest, Petitioner contends that "[i]t defies logic that Petitioner would be discharged from probation and arrested on the same date for felony charges, without facing any apparent consequences," and that "[i]t is more plausible that this is a mistake in ICE's EARM record." Dkt. No. 49 ¶ 13. But Petitioner admitted to the arrest at the hearing, even if he denied committing the offense, Dkt. No. 51 at 19, and the Kings County clerk's office confirmed the fact of the arrest indicating that

---

[2] Citations to this docket entry use ECF pagination.

[3] The Second Circuit has held that a Form I-213 carries with it "strong indicia of reliability" because it is a "record[] made by public officials in the ordinary course of their duties," and "public officials are presumed to perform their duties properly and generally lack a motive to falsify information." *See Vera Punin v. Garland*, 108 F.4th 114, 125 (2d Cir. 2024) (quoting *Felzcerek v. I.N.S.*, 75 F.3d 112, 116 (2d Cir. 1996)). Petitioner draws attention to the fact that certain arrests appear only in the EARM comments and are not listed in the Form I-213, *see* Dkt. No. 49 ¶¶ 12–14, but offers no reason why the EARM data should not also be considered presumptively reliable under the logic of *Vera Punin*. Moreover, the independent corroboration of the arrests in the EARM data tends to support the reliability of such records in this case.

the record was sealed, Dkt. No. 54-7. Moreover, the I-213 Narrative in the EARM data provides an arrest number for the arrest. Dkt. No. 54-5 at 21.

There is a discrepancy with respect to the March 7, 2023 arrest. The I-213 Narrative in the EARM data reflects that Petitioner was arrested for robbery and forcible theft armed with a deadly weapon, Dkt. No. 54-5 at 26, while Petitioner's rap sheet indicates that he was arrested for forgery in the third degree, a motor vehicle license violation, and a motor vehicle violation, Dkt. No. 25-4 at 8, and Detention and Deportation Officer Dmitry Rousseau submitted a declaration consistent with the rap sheet, Dkt. No. 26 ¶ 42. Petitioner argues that under *Vera Punin*, the presumption of reliability afforded to the Form I-213 applies "at least when the alien has put forth no evidence to contradict or impeach the statements in the report," but that where "'the reliability of the form is somehow undermined,' further scrutiny is required." Dkt. No. 55 at 3–4 (quoting *Vera Punin*, 108 F.4th at 125). Petitioner asserts that such scrutiny is merited at least with respect to the March 7, 2023 arrest given the purported inconsistencies between the Form I-213, the Rousseau declaration, and Petitioner's rap sheet—particularly because felony robbery and forcible theft would "weigh more heavily in favor of a dangerous determination," Dkt. No. 49 ¶ 23, whereas "non-violent misdemeanor offenses [would] drastically alter a dangerousness analysis," Dkt. No. 55 at 4.

The Court relied on the Form I-213 and the summary of it in the Government's exhibit. *See* Dkt. Nos. 54-4, 54-5. But even assuming that the March 7, 2023 arrest was for forgery and motor vehicle violations and not for an armed robbery, it would not have made a difference in the Court's decision. That decision was based on the totality of Petitioner's criminal history and the increased risk of flight given Petitioner's current circumstances, and not on any particular arrest. As the Second Circuit and Supreme Court have explained, the writ of *habeas corpus* "is

an 'adaptable remedy,' the 'precise application and scope' of which changes 'depending upon the circumstances.'" *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)). "The 'flexible nature' of habeas relief affords district courts significant discretion over the appropriate remedies for violations of law and the Constitution." *Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 338 (E.D.N.Y. 2026) (citation omitted).

Even when district courts order burden-shifted bond hearings to be conducted before IJs, IJs are permitted to assess "the totality of a detainee's prior criminal history, including arrests and unarraigned charges, in determining danger to the community." *Vargas v. Davies*, 2016 WL 3044850, at *4 (S.D.N.Y. May 27, 2016). Put differently, "IJs may consider the [petitioner's] conduct underlying [his] criminal charges, even if the charges did not result in a conviction." *Reid v. Decker*, 2020 WL 996604, at *12 (S.D.N.Y. Mar. 2, 2020); *see Lopez Zamora v. Almodovar*, 2026 WL 2076002, at *2 (S.D.N.Y. July 17, 2026) (ordering burden-shifted bond hearing before IJ but rejecting petitioner's request "that the IJ be directed not to give undue weight to the allegations underlying his dismissed criminal charges" because IJs are permitted to assess the totality of a detainee's prior criminal history); *Wallace v. Gonzales*, 463 F.3d 135, 139 (2d Cir. 2006) (per curiam) (declining "to prevent an IJ or the BIA from considering an applicant's anti-social conduct—whether leading to a conviction, a Youthful Offender Adjudication, or no legal judgment whatsoever—as an adverse factor in evaluating an application for discretionary relief"). Such discretionary authority extends to consideration of violent conduct for which the petitioner has not been convicted, though IJs may also consider non-physical danger to the community. *See Medley v. Decker*, 2020 WL 1033344, at *3 (S.D.N.Y. Mar. 3, 2020) (finding that IJ permissibly relied on "criminal complaints and

accompanying police reports" alleging that petitioner "engaged in violent conduct toward others," even though the IJ "was aware that [petitioner] was not convicted of all the charges against him"); 8 C.F.R. § 1236.1(c)(8) (individualized determination regarding danger to the community includes "danger to property *or* persons" (emphasis added)).[4] Here, the record when viewed as a whole gave the Court no assurance that, if released, Petitioner would refrain from further unlawful conduct. Petitioner has not shown that this determination warrants reconsideration.

Finally, Petitioner argues manifest injustice based on the current conditions of Petitioner's confinement in Winnfield, Louisiana. Dkt. No. 55 at 5–7.[5] Petitioner has been transferred to a detention facility located far from his family, substantially impairing his ability to maintain the familial relationships and support system that are critical during prolonged

[4] Moreover, at least in the context of pretrial detention for criminal defendants under the Bail Reform Act, "[d]anger to the community is not limited to violent crimes." *United States v. Ciccone*, 2002 WL 1575429, at *1 (E.D.N.Y. July 16, 2002). It can include nonphysical harm, such as "crimes that would harm the community." *Id.*; *see United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993) ("[T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." (quoting S. Rep. No. 225, 1984 U.S.C.C.A.N. 3182, 3195)); *United States v. Colombo*, 777 F.2d 96, 100 (2d Cir. 1985) ("[W]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate."); *United States v. Campos*, 2019 WL 7049953, at *1 (E.D.N.Y. Dec. 23, 2019) (acknowledging that, for purposes of 18 U.S.C. § 3142, "dangerousness encompasses more than physical violence").

[5] Petitioner originally argued in his opening brief that the Court's alleged failure to address discrepancies in the Government's evidence concerning dangerousness in the original judgment "resulted in manifest injustice that would be remedied by reconsideration." Dkt. No. 49 ¶¶ 26–30. Petitioner raised a manifest injustice argument with respect to the conditions of his confinement at the Winn Correctional Center for the first time on reply given Petitioner's then-recent transfer, attaching the affidavit of Kelvin Ayora. Dkt. No. 55 at 5–7; Dkt. No. 55-1. The Court thereafter provided the Government with an opportunity to respond to the new issues raised in Petitioner's reply, directing the Government to inquire into the conditions of Petitioner's confinement at the Winn Correctional Center and to file a letter with the Court. Dkt. No. 56. The Government filed its response on September 22, 2026. Dkt. No. 57.

confinement. *Id.* at 6. Petitioner also reports that he has not had access to his psychiatric medication or other prescription medications since his transfer to the Winn Correctional Center, and that, despite a documented allergy to soy, Petitioner has repeatedly been provided food containing soy. *Id.* The Government has responded with records indicating that Petitioner is regularly receiving his mental health medication as well as pain medication, that officials at the Winn Correctional Center have noted Petitioner's food allergies, and that Petitioner has had several medical appointments since his arrival. Dkt. Nos. 57, 57-1.

The Supreme Court has made clear that detention incident to removal proceedings may only serve two legitimate regulatory goals: "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he conditions of detention for those who have not been convicted of a crime," including immigration detainees, "cannot be punitive in nature." *Mercado v. Noem*, 800 F. Supp. 3d 526, 569 (S.D.N.Y. 2025) (citing *Zadvydas*, 533 U.S. at 693), *appeal dismissed sub nom. Barco Mercado v. Noem*, 2026 WL 1382401 (2d Cir. Mar. 3, 2026); *see Mercado v. Mullin*, --- F. Supp. 3d ----, 2026 WL 2874458, at *33 (S.D.N.Y. Sept. 24, 2026) (same). The Attorney General, however, and not the Court, has the authority to decide the location of detention for a person who is detained after being ordered removed. *See P.M. v. Joyce*, 2023 WL 2401458, at *5 (S.D.N.Y. Mar. 8, 2023) ("The Court does not have jurisdiction to review the Attorney General's discretionary authority to transfer detainees."); *Salazar v. Dubois*, 2017 WL 4045304, at *1 (S.D.N.Y. Sept. 11, 2017) ("A court lacks jurisdiction to review decisions of the Attorney General where the authority is derived from subchapter II of Chapter 12 of Title 8."); *Guangzu Zheng v. Decker*, 2014 WL 7190993, at *15–16 (S.D.N.Y. Dec. 12, 2014) (district court lacks jurisdiction to review Attorney General's discretionary administrative determination of

appropriate place of noncitizen's detention pending removal). Even if the Court might bemoan the Government's decision to detain Petitioner in Louisiana far from his family, the Court is hard-pressed to conclude that a decision which gives to the Attorney General the power that is vested in him constitutes a manifest injustice. After all, Petitioner's detention in Louisiana is the result of the Attorney General's exercise of discretion and not directly that of the Court's decision.

However, the courthouse doors remain open should Petitioner decide to bring a future *habeas* petition. While a claim that "was, or could have been, raised in an earlier petition" is generally considered an abuse of the writ, *see James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002), a material shift in the factual or legal basis of Petitioner's detention could support a renewed bond request, *see James*, 308 F.3d at 166 (gatekeeping provisions of AEDPA do not apply to petitions brought under 28 U.S.C. § 2241); 8 C.F.R. § 1003.19(e) (providing that a noncitizen held pursuant to Section 1226(a) must show that his or her circumstances have "changed materially" in order to establish the right to a bond *re*determination hearing). Thus, although the Court denies Petitioner's motion, he may seek relief anew in the district of confinement should his circumstances change materially or should the conditions of his detention warrant it. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). Should Petitioner encounter serious issues with access to adequate medical care, his conditions of confinement may also support a claim for injunctive relief. *See Mullin*, 2026 WL 2874458, at *35–37, *45 (holding that noncitizen detainees at 26 Federal Plaza were entitled to declaratory judgment and permanent injunction enjoining conditions of confinement that, *inter alia*, deprived detainees of adequate medical care).

**CONCLUSION**

For the foregoing reasons, Petitioner's motion is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 49.

SO ORDERED.

Dated: October 26, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge